UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| MARY ELIZABETH SEXTON, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> KILOLO KIJAKAZI, ) <br> COMMISSIONER OF SSA, ) <br> ) <br> Defendant. ) | Civil Action No. 6:21–CV–187–CHB <br><br> **MEMORANDUM AND OPINION** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim filed by Defendant Kilolo Kijakazi, Commissioner of the Social Security Administration ("SSA"). [R. 16]. Plaintiffs responded to the Motion, [R. 18], and the Commissioner replied, [R. 20]. This matter is fully briefed. For the reasons set forth herein, the Court will grant the Commissioner's Motion to Dismiss.

**I.   Background**

Around 2006, the SSA was alerted to "possible wrongdoing" involving Kentucky attorney Eric C. Conn, SSA Administrative Law Judges ("ALJs"), and four physicians. *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018); *see also* [R. 18, pp. 3–4]. Upon investigation, the "possible wrongdoing" was confirmed to be a widespread fraudulent scheme in which Conn secured Supplemental Security Income benefits and Social Security Disability Insurance for his clients based on fraudulent disability applications. [R. 16, p. 3 n.3]; *Hicks*, 909 F.3d at 793. As summarized by the Sixth Circuit, the scheme worked as follows:

> Conn created a limited number of template Residual Functional Capacity ("RFC") forms, which he or attorneys in his office filled out ahead of time. *Id.* at 13. These

> forms, which are normally meant to convey a claimant's "ability to do work-related activities on a day-to-day basis in a regular work setting," 16-cv-154 (Hicks), R. 42-2 (Adkins Report, RFC Form) (Page ID #1438), were purportedly manipulated to ensure that they satisfied the SSA's criteria for establishing a disability. *Id.* The doctors above then signed these forms without making any adjustments, and Conn submitted the forms to the SSA on behalf of his clients. *Id.* [ALJ] Daugherty, who was allegedly receiving bribes from Conn, then assigned Conn's cases to himself and issued favorable rulings to Conn's clients. *Id.* at 14-15; Pls. Br. at 4.

*Hicks*, 909 F.3d at 793.

In 2011, to cover his criminal behavior, Conn had thousands of pounds of documents from the Conn Law Firm shredded, including medical records for disability claims. *Id.*; *see also* [R. 1, p. 7, ¶ 18]. Nonetheless, by 2014, the SSA's Office of the Inspector General ("OIG") had identified over a thousand individuals—all of whom had been represented by Conn—whose applications, the OIG "'had reason to believe,' were tainted by fraud." *Hicks*, 909 F.3d at 794. Due to the suspected fraud, the SSA initiated redetermination hearings to reevaluate the flagged individuals' eligibility for benefits. *Id.* Such redetermination hearings were in accordance with the Social Security Act ("the Act"), which requires the SSA to "immediately redetermine" a beneficiary's entitlement to disability benefits if, at any point after granting benefits, the SSA has "reason to believe that fraud or similar fault was involved in the application" for benefits. *See* 42 U.S.C. § 405(u)(1)(A).

In 2020–2021, the SSA informed Plaintiffs Mary Elizabeth Sexton, Rose Ann Slone, Delmer Gene Reynolds, and Jeffrey Neal Bentley that redetermination hearings were required in their cases, as Conn represented all of them when they obtained disability benefits (anywhere from 2005–2010). [R. 1, pp. 3–5, ¶¶ 5–9]; *see also* 42 U.S.C. § 405(u)(1)(A); [R. 1–4 (SSA letters advising Plaintiffs on how to prepare for their

hearings)].[1] To prevent the redetermination hearings, Plaintiffs collectively filed a Complaint and Petition for Injunctive Relief ("Complaint") in this Court. [R. 1]. Specifically, the Plaintiffs seek (1) a declaratory judgment and injunctive relief that prohibits the Commissioner from initiating the redetermination hearings, and (2) a finding that the Commissioner has violated the due process clause of the Constitution and the "immediately" requirement of 42 U.S.C. § 405(u)(1)(A) since the redetermination hearings are to occur "over a decade after [the Commissioner] received notice of the fraud[.]" *Id.* at 9 ¶¶ 24, 26. In response, the Commissioner moves to dismiss the Plaintiffs' claims for, among other things, lack of jurisdiction. *See* [R. 16].[2] Plaintiffs responded, [R. 18], and the Commissioner replied, [R. 20].

## II. Standard of Review

A motion under Federal Rule of Civil Procedure 12(b)(1) asserts that the court lacks subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack is a challenge to the sufficiency of the pleading itself. *Id.* "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–

---

[1] Plaintiff Mary Elizabeth Sexton has already been subjected to one redetermination hearing, which resulted in the termination of her benefits. [R. 16, p. 2]. However, after the Sixth Circuit's ruling in *Hicks*, the District Court remanded Sexton's case for further proceedings consistent with the *Hicks* ruling and reinstated her benefits until the redetermination proceedings were completed. *See* [R. 16, pp. 4–5]; *In re Various Soc. Sec. Cases Affected by the Sixth Circuit Decision*, No. 17–5206, 2019 U.S. Dist. LEXIS 116439 (E.D. Ky. July 12, 2019) (Case No. 7:16–CV–212). Accordingly, the SSA is currently trying to conduct another redetermination hearing in Sexton's case that is consistent with the *Hicks* opinion. *Id.* Thus, if the Court were to halt the redetermination hearing in Sexton's case, it would effectively overturn the District Court's previous remand order, and the Sixth Circuit's ruling in *Hicks*. As a result, and in addition to the other reasons provided in this opinion, the Court declines to stop Sexton's redetermination hearing.

[2] Because the Court is granting the Commissioner's Motion to Dismiss [R. 16] under Rule 12(b)(1) for lack of jurisdiction, it will not address the Commissioner's alternative argument to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. *See* [R. 16, pp. 16–17; R. 20, pp. 7–8].

37 (1974)). If those allegations establish federal claims, jurisdiction exists. *Gentek Bldg. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A *factual* attack is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. *Richie*, 15 F.3d at 598. With a factual attack, "no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Gentek*, 491 F.3d at 330 (citations omitted). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction exists. *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

Here, the Commissioner does not state whether his challenge under Rule 12(b)(1) is facial or factual. *See* [R. 16, p. 10]. However, the Court finds it to be a facial challenge. As noted above, the Commissioner's main argument is that Plaintiffs' claims should be dismissed because they failed to exhaust their administrative remedies prior to seeking judicial review. *See id.* 11–15. Plaintiffs neither plead to the contrary, *see infra* Section III.A. and [R. 1], nor challenge the Commissioner's assertion as a factual matter. That is, Plaintiffs do not argue as a factual matter that they have exhausted their administrative remedies. Rather, they argue judicial waiver of the exhaustion requirement, which is a legal issue. *See* [R. 18, pp. 10–14]; *Justiniano v. SSA*, 876 F.3d 14, 24 (1st Cir. 2017) (citing *Wilkerson v. Bowen*, 828 F.2d 117, 119 (3d Cir. 1987)) ("[T]he question of whether a request for judicial waiver of exhaustion must be granted is a legal one[.]"); *contra Brown v. Comm'r of Soc. Sec.*, No. 1:16–CV–1464, 2017 WL 3908272, at *1, 3 (W.D. Mich. June 2, 2017), *report and recommendation adopted*, 2017 WL 3873320 (W.D. Mich. Sept. 5, 2017), *aff'd*, No. 18–1222, 2018 WL 7502897 (6th Cir. Aug. 30, 2018) (where the

4

plaintiff pleaded exhaustion, and the Commissioner's failure to exhaust argument was construed as a factual attack).

Alternatively, without stating the authority under which the Court has jurisdiction, Plaintiffs assert that the Court has jurisdiction over their due process claim. *See* [R. 18, pp. 14–16]. Much like Plaintiffs' first argument, this assertion also fails to raise a factual dispute. *See infra* Section III.C.; *Dinwiddie v. Berryhill*, No. 5:17–CV–401–DCR, 2018 U.S. Dist. LEXIS 54427, at *6–7 (E.D. Ky. Mar. 30, 2018) (where the court construed the Commissioner's failure to exhaust argument as a facial attack and decided, as a matter of law, the Court lacked federal question jurisdiction over the plaintiff's claims because such claims arose under the Social Security Act); *see also Martin v. Colvin*, No. 15–46–ART, 2015 U.S. Dist. LEXIS 155272, at *11–13 (E.D. Ky. Nov. 16, 2015), *reconsideration denied*, 2016 U.S. Dist. LEXIS 44981 (E.D. Ky. Apr. 1, 2016), *vacated as moot*, 2018 U.S. App. LEXIS 1019 (6th Cir. Jan. 16, 2018) (where the court decided that it could not exercise federal question jurisdiction over the plaintiffs' claims because such claims arose under the Social Security Act). Accordingly, because the claims at issue here are not factual disputes, but purely legal questions, the Court finds the Commissioner presents a facial attack on the Court's jurisdiction. *See Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014) (explaining a district court resolves a facial challenge when it analyzes the complaint on its face and does *not* inquire into factual predicates for jurisdiction); *Justiniano*, 876 F.3d at 21 (where the plaintiffs brought similar claims to the ones at bar and the court deemed the issues "'nearly pure'" questions of law because "the facts [were] largely uncontested."). As a result, the Court will take Plaintiffs' Complaint as true and view it in a light most favorable to Plaintiffs. *Richie*, 15 F.3d at 598 (citing *Scheuer*, 416 U.S. at 235–37).

**III.  Analysis**

Federal Courts have limited jurisdiction, and "the decisions of the Commissioner may only be reviewed by a court as provided under the [Act]." *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975). Under the Act, federal courts have jurisdiction to review "any final decision of the Commissioner of Social Security made after a hearing to which [the individual] was a party." 42 U.S.C. § 405(g). Accordingly, "virtually all legal challenges to an administrative determination must be channeled through the … administrative process before judicial review is available as set forth in § 405(g)[.]" *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 359 (6th Cir. 2000); *see also Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 12–13 (2000). To satisfy this requirement, a claimant must complete two steps: First, the claimant must "present" his claim(s) to the Commissioner. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). Second, the claimant must exhaust all available administrative remedies. *Id.* Although the Commissioner may not waive the first step, she may waive the exhaustion requirement when "she deems [it] futile." *Heckler v. Ringer*, 466 U.S. 602, 617 (1984). Here, as made obvious by her Motion and Reply, *see* [R. 16; R. 20], the Commissioner has not waived the exhaustion requirement.

### A. Plaintiffs Have Not Exhausted Their Administrative Remedies

In her Motion, the Commissioner argues that the Court lacks subject matter jurisdiction over the case at bar because Plaintiffs failed to exhaust their administrative remedies, as required by 42 U.S.C. § 405(g)–(h), by not obtaining a final agency decision ("FAD") prior to filing their Complaint in this Court. *See* [R. 16, pp. 10–15]. In their Response, Plaintiffs do not counter this assertion, but contend that they satisfy the requirements for judicial waiver of exhaustion. *See* [R. 18, pp. 8–14]. Accordingly, the Court finds that Plaintiffs concede that they did not exhaust their administrative remedies prior to filing this suit. *See*

*ARJN #3 v. Cooper*, 517 F. Supp.3d 732, 750 (M.D. Tenn. 2021) (quoting *Mekani v. Homecomings Fin., LLC*, 752 F. Supp.2d 785, 797 (E.D. Mich. 2010)) ("Where a party fails to respond to an argument in a motion to dismiss[,] 'the Court assumes he concedes this point and abandons the claim.'").

Even overlooking Plaintiffs' concession, it is clear Plaintiffs failed to obtain a FAD prior to seeking judicial review in this Court. A final decision under § 405(g) concerns whether a claimant is entitled to benefits. *Eldridge*, 424 U.S. 319, 329 (1976). Further, "a claimant must complete all three stages of the SSA's administrative appeals process to receive a 'final decision' under § 405(g)." *Martin*, 2015 U.S. Dist. LEXIS 155272, at *5 (quoting *Bowen*, 476 U.S. at 482). Here, Plaintiffs' redetermination hearings, of which they are a required party, have yet to occur. *See* § 405(g). Thus, none of the Plaintiffs obtained a final decision prior to filing suit in this Court. Indeed, the entire premise of Plaintiffs' Complaint is that the Court should intervene *before* such hearings even take place by prohibiting the hearings and by finding that the Commissioner violated due process and the "immediately" requirement of § 405(u)(1)(A). *See* [R. 1]. Accordingly, Plaintiffs' Complaint, on its face, establishes that Plaintiffs have failed to meet the exhaustion requirement.

The Court will next address the issue of whether Plaintiffs' failure to exhaust their administrative remedies should be judicially waived.

### B. Judicial Waiver Is Not Applicable

The Supreme Court summarized the purpose underlying the doctrine of administrative exhaustion as follows:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it

7

> may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger*, 422 U.S. at 765. Such purpose is to guide the Court when determining whether to waive the exhaustion requirement. *See Bowen*, 476 U.S. at 484 ("The ultimate decision of whether to waive exhaustion … should also be guided by the policies underlying the exhaustion requirement."). In addition, the Court must consider the following factors: (1) are the claims at issue collateral to the underlying decisions to eligibility for entitlement; (2) would claimants be irreparably harmed were the exhaustion requirement enforced against them; and (3) would exhaustion of administrative remedies be futile. *Id.* at 482–86; *see also Manakee Prof'l Med. Transfer Serv.*, 71 F.3d at 580. Application of the factors should not be "solely … mechanical" but "practical." *Bowen*, 476 U.S. at 484.

Claims are collateral if they involve "completely separate issues from the party's claim that it is entitled to benefits[.]" *Cathedral Rock*, 223 F.3d at 363. Here, Plaintiffs seek declaratory and injunctive relief to prohibit the Commissioner from initiating redetermination hearings and a finding that the Commissioner violated due process and the "immediately" requirement of 42 U.S.C. § 405(u)(1)(A). *See* [R. 1]. Plaintiffs argue their claims "are collateral because a favorable resolution of those claims would *not* result in entitlement to disability benefits." [R. 18, p. 11] (emphasis added). The Court disagrees. The SSA is conducting the redetermination hearings with the *sole* purpose of revaluating whether Plaintiffs are entitled to the social security benefits they are currently receiving. *See* [R. 1, pp. 3–5, ¶¶ 5–9, 16]; 42 U.S.C. § 405(u)(1)(A). In other words, the redetermination hearings "go to the very heart of [Plaintiffs'] claims for benefits—whether they are disabled and should continue to receive benefits." [R. 20, p. 3]. If the Court were

8

to rule favorably for Plaintiffs, the SSA would be prohibited from conducting the mandated redetermination hearings, *see* 42 U.S.C. § 405(u)(1)(A), and Plaintiffs would automatically retain their current benefits regardless of whether they were obtained via Conn's fraudulent scheme. Such outcome is a clear indication that Plaintiffs' claims are not "completely separate" from their entitlement to benefits. *Cathedral Rock*, 223 F.3d at 363. The Court in *Martin* also reached the same conclusion.

In *Martin*, the plaintiffs argued that they should have the opportunity to challenge the SSA's decision to open their cases for redetermination both before and during the redetermination process. 2015 U.S. Dist. LEXIS 155272, at *3. Much like in this case, the plaintiffs made their argument in federal court before exhausting their administrative remedies. *Id.* at 5–6. When determining whether waiver of the exhaustion requirement was applicable, the Court found that the plaintiffs' claims were not "entirely collateral." *Id.* at 6. Specifically, the Court concluded that the plaintiffs' claims were not collateral because "[i]f the Court held that the SSA wrongfully opened the plaintiffs' files for redetermination, the plaintiffs' disability benefits would continue without the possibility of termination." *Id.* at 7. Put differently, the *Martin* court determined that the plaintiffs' claims were not collateral because ruling in their favor would automatically result in an entitlement to benefits. *Id.* (citing *Cathedral Rock*, 223 F.3d at 363) ("A claim is not entirely collateral when a plaintiff's success on that claim would mean entitlement to benefits or increased benefits."). As explained above, the Court finds the same is true here. *Contra Justiniano*, 876 F.3d at 27 (where the plaintiffs ultimately failed to meet all the factors of waiver, but the court concluded the plaintiffs' claims were collateral because "a win for the plaintiffs

9

in federal court would *not* necessarily entitle them to benefits.") (emphasis added). Accordingly, Plaintiffs' claims are not collateral claims.

Further, despite Plaintiffs' argument to the contrary, *see* [R. 18, pp. 11–12], they will not be "irreparably harmed" by the enforcement of the exhaustion requirement. *Bowen*, 476 U.S. at 482–86. Plaintiffs are currently receiving social security benefits and will continue to do so unless they are deemed to be non-disabled during a redetermination hearing. *See* [R. 1, pp. 3–5, ¶¶ 5–9, 16]; [R. 20, p. 4]. This is a far cry from the scenarios in the cases cited by Plaintiffs, where the claimants' benefits were either withheld or suspended prior to a hearing/resolution of the disputed issue. *See* [R. 18, p. 11 (citing *Eldridge*, 424 U.S. at 331 and *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989)]. Moreover, even if the redetermination hearings result in a finding of no disability for any or all Plaintiffs, Plaintiffs can appeal the unfavorable decision by utilizing the SSA appeals process, which allows them to file suit in federal court if the SSA Appeals Council denies their request for review and/or their appeal. *See* 20 C.F.R. § 404.981; [R. 16, p. 15; R. 20, p. 4]. Put simply, Plaintiffs are neither deprived of their benefits prior to the redetermination hearings nor left "high and dry" if the initial redetermination hearings and appeals processes do not fall in their favor. As a result, the Court finds that enforcement of the exhaustion requirement would not "irreparably harm" Plaintiffs. *Bowen*, 476 U.S. at 482–86.

Finally, Plaintiffs argue that exhaustion would be "futile" because the policies underlying the exhaustion requirement will not be served. *Bowen*, 476 U.S. at 482–86; *see also* [R. 18, pp. 12–14]. Once again, the Court disagrees. The very purpose of the exhaustion doctrine is to allow the SSA an opportunity "to correct its own errors" and "to

10

afford the parties and the courts the benefit of its experience and expertise." *Weinberger*, 422 U.S. at 765. In accordance with this purpose, and as pointed out by the Commissioner, the redetermination hearings will provide each Plaintiff with the opportunity to "challenge the SSA's determination that fraud might have been involved in their applications for benefits." *Martin*, 2015 U.S. Dist. LEXIS 155272, at *9; [R. 20, p. 4]; *see also Hicks*, 909 F.3d at 804 ("The district court … was right to conclude that refusing to allow plaintiffs to rebut the OIG's assertion of fraud as to their individual applications violates the Due Process Clause of the Fifth Amendment."). Further, at their redetermination hearings, Plaintiffs will have an opportunity to challenge the Commissioner's compliance with the "immediately" requirement of 42 U.S.C. § 405(u)(1)(A) and to "provide fact-specific information about whether and how the complained-of delay actually affected the specific record in their individual case." [R. 20, p. 4]. If an unfavorable outcome results from the redetermination hearing, and the appeal reaches the federal level, the Court will have a developed record specific to each Plaintiff. That is, the redetermination hearings will still have served the purpose underlying the exhaustion requirement by providing the Court with an "adequate" record to review. *Weinberger*, 422 U.S. at 765. Accordingly, enforcement of the exhaustion doctrine is not "futile" in this case.

All factors weigh against judicial waiver of the exhaustion requirement. Thus, while the Court is sympathetic to Plaintiffs' plight, it declines to waive exhaustion in this case.

### C. The Court Does Not Have Federal Question Jurisdiction Over Plaintiffs' Due Process Claim

In their Complaint, Plaintiffs allege that the Commissioner has violated the due process clause of the United States Constitution because she has failed to conduct Plaintiffs' redetermination hearings "immediately," as required by 42 U.S.C. § 405(u)(1)(A). *See* [R.

11

1, p. 9, ¶¶ 25–26]. In her Motion, the Commissioner argues that such claim should be dismissed because "couching an argument in constitutional terms does not allow [the Plaintiffs] to evade Section 405(h)'s requirement of a [FAD] before judicial review is allowed under the Act." [R. 16, p. 14]; *see also* [R. 20, p. 6]. In other words, the Commissioner contends that Plaintiffs' constitutional claim should also be dismissed because the Court cannot address it prior to Plaintiffs exhausting their administrative remedies. In their Response, Plaintiffs argue a due process violation but do not mention, let alone rebut, the Commissioner's exhaustion argument. *See* [R. 18, pp. 15–16]. As such, the Court deems Plaintiffs' lack of response as a concession of the issue. *See ARJN #3*, 517 F. Supp.3d at 750 (quoting *Mekani*, 752 F. Supp.2d at 797) ("Where a party fails to respond to an argument in a motion to dismiss[,] 'the Court assumes he concedes this point and abandons the claim.'"). However, even overlooking Plaintiffs' concession, the Court does not have federal question jurisdiction over Plaintiffs' constitutional claim.

As stated above, 42 U.S.C. § 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party … may obtain review of such decision" in federal district court. In turn, 42 U.S.C. § 405(h) expressly provides that courts do not have federal question jurisdiction for claims arising under the Act:

> No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 [federal question jurisdiction] or 1346 [federal defendant jurisdiction] of Title 28 to recover on any claim arising under this subchapter [i.e., Federal Old-Age, Survivors, and Disability Insurance Benefits].

Combined, the provisions make clear that, "42 U.S.C. § 405(g), to the exclusion of the general federal-question jurisdiction statute, is the *sole* avenue for judicial review of claims

arising under the [Social Security Act]." *Dinwiddie*, 2018 U.S. Dist. LEXIS 54427, at *6 (citing *Heckler*, 466 U.S. at 614–15) (emphasis added); *see also Ill. Council on Long Term Care*, 529 U.S. at 10 ("Section 405(h) purports to make exclusive the judicial review method set forth in § 405(g)."); *Martin*, 2015 U.S. Dist. LEXIS 155272, at *11 (citing 42 U.S.C. § 405(h)) ("Court generally do not have federal question jurisdiction over claims 'arising under' the Social Security Act.").

In the mid-1970s, the Supreme Court held that a claim for relief "arise[s] under" the Act where it "provides both the standing and the substantive basis for the presentation of [the Plaintiffs'] … contentions." *Weinberger*, 422 U.S. at 760–61. More recently, the Court expounded on § 405(h)'s meaning, explaining that it clearly covers

> a typical Social Security … benefits case, where an individual seeks a monetary benefit from the agency [e.g., disability payments], the agency denies the benefit and the individual challenges the lawfulness of that denial … irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds.

*Ill. Council on Long Term Care*, 529 U.S. at 10. In addition, the Court held that any "distinctions based upon the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought" were foreclosed and that

> [c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h).

*Id.* at 13–14.

Here, Plaintiffs argue that the Commissioner's failure to "immediately" conduct their redetermination hearings under 42 U.S.C. § 405(u)(1)(A) violates their due process rights. *See* [R. 1, p. 9, ¶¶ 25–26]. Specifically, Plaintiffs assert that "[a]lthough the [Act] requires the [SSA] to conduct hearings immediately, [the SSA has], for the fifteen years of this controversy, made a mockery of their duty to immediately initiate redetermination hearings." [R. 1, p. 5, ¶ 11]. Such claim is clearly considered to "aris[e] under" the Act because the Act provides "the standing and substantive basis" for the claim. *Weinberger*, 422 U.S. at 760–61. The fact that the claim is based on Plaintiffs' constitutional right to due process does not change that. *See Martin*, 2015 U.S. Dist. LEXIS 155272, at *11 ("Indeed, all of the plaintiffs' claims [including their constitutional claims] 'arise under' the [Act] because they challenge *some* aspect of the agency's decision about their benefit claims.") (emphasis added); *see also Justiniano*, 876 F.3d at 22 (citing *Ill. Council on Long Term Care*, 529 U.S. at 11–14 and *Weinberger*, 422 U.S. at 760–61) ("[T]he fact that the plaintiffs have a constitutional basis for their claims does not change the fact that those claims 'arise under' the Act."). Consequently, for Plaintiffs to have successfully brought this claim, they must have first obtained a FAD from the Commissioner. *See Dinwiddie*, 2018 U.S. Dist. LEXIS 54427, at *6 (citing 42 U.S.C. § 405(g)) ("[T]o bring an action for a claim arising under the Act … there first must be a final decision of the Commissioner."). Because none of the Plaintiffs obtained a FAD from the Commissioner prior to filing this suit, they have failed to exhaust their administrative remedies as required by the Act. Accordingly, the Court does not have jurisdiction under 42 U.S.C. § 405(g) to entertain their constitutional claim.

**IV.    Conclusion**

For the reasons stated above, the Court will grant the Commissioner's Motion to Dismiss [R. 16]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Motion to Dismiss filed by Defendant Kilolo Kijakazi, Commissioner of the Social Security Administration [R. 16] is **GRANTED**.

2. Plaintiffs' Motion for Preliminary Injunction [R. 4] is **DENIED** as moot.

3. Plaintiffs' Complaint and Petition for Injunctive Relief [R. 1] is **DISMISSED** and **STRICKEN** from the Court's **ACTIVE DOCKET**.

This the 31st day of May, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY